ROBERT H. INGERSOLL & BRO. v. SNELLENBERG et al.

(Circuit Court, E. D. Pennsylvania. October 6, 1906.)

No. 18.

PATENTS—INFRINGEMENT—RESTRICTIONS ON SALE OF ARTICLE—RIGHT OF LICENSEE TO IMPOSE.

An exclusive license to sell a patented article, granted by the owner of the patent who is also the manufacturer of the article, does not vest the licensee with the right to impose a valid restriction upon the future selling price of the article under penalty of liability for infringement of the patent.

In Equity. Suit for infringement of patents. On final hearing.

C. Bradford Fraley and A. Bell Malcomson, for complainant.

R. W. Archbald, Jr., Hector T. Fenton, and Simpson & Brown, for defendants.

J. B. McPHERSON, District Judge. The complainants are Robert H. Ingersoll & Bro., a joint stock association of the state of New York, and the Waterbury Clock Company, a corporation of the same state. The defendants are the firm of N. Snellenberg & Sons, a Pennsylvania partnership, doing business in the city of Philadelphia. The facts out of which the controversy arises are as follows:

On February 7, 1890, two applications were made by Archibald Bannatyne for improvements in the escapement mechanism of clocks, and for an improved clock-pinion, respectively. The applicant's rights were afterwards assigned to the Waterbury Clock Company, one of the complainants, to whom the patents (Nos. 443,248 and 444,684) were duly issued in December, 1890, and January, 1891. Within a year or two thereafter, the partnership of Robert H. Ingersoll & Co. —the predecessor of the joint stock association, complainant—began to sell at wholesale watches that contained the patented improvements, and in 1895 or 1896 endeavored to impose upon the retail trade a schedule of prices, at which the watches should be sold to the ultimate purchasers. The nature and object of this effort is thus described by one of the witnesses, a member of the joint stock association complainant:

"We have established what we consider proper retail prices at which the goods should be sold, and which would give the dealer, as well as ourselves, a proper margin of profit, and have compelled the trade to adhere to that schedule."

About 1900, the partnership began to send out the following notice, which was printed upon the pasteboard box in which each watch sold by them to the retail trade was inclosed.

"Yankee Watch. Nickel. Notice.

"As manufacturers of the Yankee Watch under various United States patents and trade-marks owned and controlled exclusively by us, which according to recent court decisions establish our right and privilege to fix the retail price, we do hereby fix such price at one dollar ($1.00), and we sell this watch only on condition that the retail dealer will not sell it for less than one dollar ($1.00).

"'The retail dealer acknowledges that the receipt and acceptance of this watch shall be an assent to the above terms and an agreement directly with the manufacturers to sell subject to the above fixed price.

"163 Washington St.,     Robt. H. Ingersoll & Bro., Manufacturers.

"67 Cortlandt St.,                         New York,

"111 Nassau St.,                            U. S. A."

Several kinds of watches containing the patented improvements were sold by the firm, but it is the "Yankee" watch alone that is involved in this dispute. Accompanying each watch, also, and usually inclosed in the case, was a printed guaranty in the following form:

"Guarantee. Date.

"We guarantee this watch to keep good time for one year from above date, provided it has not been misused, and if it fails to do so under the above conditions, we will, on its return to us, together with 5c. for re-mailing and this guarantee, repair it free of charge.

"R. H. Ingersoll & Bro., Makers,

"163–165 Washington Street,              New York City.

"Option. It requires about ten days to repair. If, instead of waiting for your watch to be repaired, you prefer a new one, enclose us 10c. in addition to the 5c. postage and we will, if not misused, send you a new watch at once. Pack carefully, put your name and address on package for identification."

On February 5, 1903, the joint stock association having meanwhile been formed, the partnership conveyed to the association, complainant, all the assets of the firm, including the right to sell watches containing the patented improvements. This right had been previously acquired by an agreement made on July 1, 1899, with the Waterbury Clock Company, of which the following is a copy:

"Whereas, two several letters patent of the United States were granted to the Waterbury Clock Company for inventions made by Archibald Bannatyne and assigned to said Waterbury Clock Company; which said letters patent are numbered and dated as follows:

"No. 443,248, dated December 23, 1890.

"No. 444,684, dated January 13, 1891.

"Now therefore, for and in consideration of one dollar and other valuable considerations, the said Waterbury Clock Company has granted to Robert H. Ingersoll and Charles H. Ingersoll, composing the firm of Rob't H. Ingersoll & Bro., their heirs, successors or assigns, the sole right to sell watches made containing the inventions covered by said letters patent, the said watches to be made by the Waterbury Clock Company, and this exclusive license to sell to continue until formal notice of withdrawal is served by either party on the other."

After the joint stock association acquired the partnership business and assets, it continued to sell the watches in question in the same manner and under the same notice as had been previously followed by the partnership. On April 30, 1902, the defendants, who own and conduct a large department store in Philadelphia at Twelfth and Market streets, put the following advertisement in one of the city newspapers:

"Bargain No. 8.                                    Main floor.

     "Ingersoll $1.00 Yankee Watch

     "Retailed at $1.00 all over the world.             79c.

"Today's price 79c.

     "Designated by special red price tickets."

On January 16, 1903, and on February 3, 1903, other advertisements were inserted as follows:

"At 85c. Ingersoll Yankee Watches—Nickel or gun-metal. Regular price $1.00. Friday price 85c."

"$1. Ingersoll Watch, 79c. The Ingersoll Yankee Watches are good timekeepers: we have them in nickel or gun-metal."

Sales were made at the defendants' store on Twelfth street at the reduced prices named in these advertisements, namely, 79 cents and 85 cents. At the time when these prices were offered to the public, the defendants were aware of the restriction which Robert H. Ingersoll & Bro. were seeking to impose upon the retail price at which the Yankee watch should be sold, and the subsequent sales made by the defendants were intended to violate this restriction. There is no evidence that the Waterbury Clock Company, by any direct action of its own, ever attempted to impose any restriction upon the selling prices of the Yankee watch, or that it ever gave to Robert H. Ingersoll & Bro. any authority to impose such a restriction.

Upon these facts it will be observed that a question arises which I think has not yet been decided by the courts, namely, whether a person, who is an exclusive licensee to sell, but has no other interest in a patent, may impose a valid restriction on the future selling price of the patented article, solely by virtue of the right to sell given to him by the license. It is no doubt the fact that Robert H. Ingersoll & Bro. declare in their notice and guaranty that they are the makers of these watches, and that they own and control exclusively the patents under which the watches are manufactured; but these statements are not true, and the undisputed testimony shows that every Yankee watch sold by the joint stock association is manufactured by the Waterbury Clock Company, and not by Robert H. Ingersoll & Bro., and that the only right of the joint stock association is the right to sell that is given by the contract of January 1, 1899. The extent of this right is perhaps not clearly defined by the contract. It may be an exclusive right to sell merely as agents for the clock company under some undisclosed agreement concerning compensation, or it may be an exclusive right to sell the watches after they have been bought outright from the clock company at such prices as the parties may have fixed. In either event, however, the right of the licensee to restrict the future selling price must find its warrant, if any warrant exists, in a grant of authority by the owner of the patent, and, if no such grant has been proved, the licensee's right to restrict cannot be implied. As the case presents itself to my mind, the proper conclusion does not seem to be difficult to reach. The decisions that support the right of a patentee to impose restrictions upon the future sale or use of the patented article are based upon his ownership of a monopoly, and his consequent right to declare upon what terms he will admit the public to share in such ownership, or to profit by the use of the article. This principle is now thoroughly established, and it is unnecessary to do more than refer to the following cases on the subject: Bement v. Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058; Victor Talking-Machine Co. v. The Fair,

123 Fed. 424, 61 C. C. A. 58; Edison Phon. Co. v. Kaufman (C. C.) 105 Fed. 960; Same v. Pike (C. C.) 116 Fed. 863; and Heaton Co. v. Eureka Co., 77 Fed. 228, 25 C. C. A. 267, 35 L. R. A. 728. But it is equally well established, that, when the owner of a patent sells the article containing the invention without imposing any restriction upon its future sale or use, the article passes at once out of the protection of the monopoly and becomes irrevocably a part of the general property of the community, which may thereafter be bought and sold as freely as any other article that has never been patented. 2 Robinson, Patents, § 824, and cases cited in notes.

I do not think that these principles need to be enlarged upon. Their application to the present dispute seems to be plain. The bill is expressly put upon the theory—and the evidence supports the position—that Robert H. Ingersoll & Bro., merely as exclusive licensees to sell, and in no other character, have imposed a valid limitation upon the right of those who buy from them to fix the price at which the Yankee watch thus bought may be sold to the ultimate purchaser at retail. As already intimated, I do not think that this ground can be successfully maintained. So far as appears, the Waterbury Clock Company has neither imposed any such restriction itself, nor has authorized Robert H. Ingersoll & Bro. to impose it; and, failing these two supports for the restriction, I think it must necessarily fall.

If this conclusion is correct, the validity of the patents need not be considered, nor the other defenses that have been argued by counsel.

A decree may be entered, dismissing the bill, with costs.