THOMAS A. EDISON, Inc., v. IRA M. SMITH MERCANTILE CO.

(Circuit Court, W. D. Michigan, S. D.   July 25, 1911.)

**1. PATENTS (§ 216\*)—RIGHTS OF PATENTEE—PRICE OF SALE.**

A patentee may, by appropriate contract, reserve to himself control over the price or other conditions attending the public enjoyment of the patented article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. § 216.\*]

**2. PATENTS (§ 216\*)—PATENTED ARTICLE—SALE—RESTRICTIONS.**

Where price restrictions and other conditions are imposed by contract on the sale of a patented article, such restrictions will or will not be considered as running with the article, depending in each case on the transaction by which the patentee offered the article to the public for use; the right of use and resale being such only as might be normally appropriate to the article and implied from the circumstances of the original sale.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. § 216.\*]

**3. PATENTS (§ 216\*)—SALE OF PATENTED ARTICLE—PRICE RESTRICTIONS—INJUNCTION.**

Patented phonograph records were manufactured and sold under contracts authorizing jobbers and dealers to resell the same, provided that such resale should not be made except for a specified price, and that on any breach of the condition the license to use and vend the record implied from the purchase for resale immediately terminated. The stock of an authorized dealer in such records having been damaged by fire, it was abandoned to an insurance company which sold the stock to a salvage company by which it was sold to defendant; some of the records being in the original cartons and others having been replaced in blank cartons. *Held,* that defendant having offered such records for sale at cut prices with knowledge of the restrictions under which they were originally sold was subject to an injunction restraining a resale at less than the contract prices.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 216.\*]

**4. PATENTS (§ 216\*)—SALE OF PATENTED ARTICLE—PRICE RESTRICTIONS.**

The right of a patentee to impose a price restriction on resale of a patented article extends to a licensee to whom has been granted the exclusive right to make, use, and sell the patented invention throughout the United States.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 216.\*]

**5. PATENTS (§ 216\*)—SALE IN VIOLATION OF RESTRICTIONS—INJUNCTION—ADJUDICATION OF PATENT.**

Where there was nothing to rebut the presumption of validity of a patent, and there was a certain public acquiescence, it was no objection to the issuance of a temporary injunction to restrain defendant's sale of the patented article in violation of price restrictions that the patent had never been adjudicated.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 216.\*]

In Equity. Bill by Thomas A. Edison, Incorporated, against the Ira M. Smith Mercantile Company. On motion for preliminary injunction. Granted.

Offield, Towle, Graves & Offield and Butterfield & Keeney, for complainant.

James H. Campbell and Wilson, Wilson & Rice, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DENISON, District Judge. [1] As to the underlying question presented by this motion, I cannot hesitate to accept, as the now prevailing and general rule established by many familiar cases, the position that a patentee may, by appropriate contract, reserve to himself a control over the price or other conditions attending the public enjoyment of the patented article. Several courts have recognized a tendency to go too far in sanctioning such conditions, and some recent decisions in the Second Circuit, as well as the opinions of the Supreme Court in the Bobbs-Merrill Case, 210 U. S. 339, 28 Sup. Ct. 722, 52 L. Ed. 1086, and the Dr. Miles Case, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. ——, and the granting of the pending certiorari in the Dick Case,[1] have tended to indicate that some limits will be placed upon the now customary practice.

[2] As the result of all the decisions on this subject, and in the absence of any pronouncement by the Supreme Court, I think it must be taken as the existing rule that the force of these restrictions, as running with the patented article, depends, in each case, upon the transaction by which the patentee embarked the article upon its voyage. Such transaction is not necessarily unconditional and absolute, because it is denominated a "sale"; nor is it necessarily any less than a complete sale because denominated a "conditional sale" or "license.". Its dominant characteristic is a question of construction in each case. Some analogy may be found in the case of a shipment and delivery of an unpatented article where, afterwards, the vendor claims the title was reserved, and that he may retake the article. There are cases such that even where title and right of reclamation were, in terms, reserved, yet, if the vendee had the right to sell and convey a perfect title and to become merely a debtor to the vendor for the proceeds, the characteristics of a complete sale dominated those of a conditional sale or bailment, and the attempted reservation of title was inefficient.

Applying the above criterion to this case, it would seem that the patentees have rightly apprehended the exact nature of the patent monopoly to make, use, and sell. A sale by the patentee of the patented article which he has manufactured, does not, according to the letter of the statute, exhaust the patentee's monopoly with reference thereto. The purchaser does not, in so many words, acquire a right to use the article or to sell it again; but such right of use, and such right of resale as may be normally appropriate to the article, are implied from the fact of the original sale. This implication may be more or less extensive. It involves the right to repair, but not the right to reconstruct. Accordingly, in this case, the patentees, while they speak, in their jobbers' contracts and dealers' contracts and in their notices on the cartons, of a "sale," go on expressly to say that it is a condition of such sale that the article shall not be resold, except for the specified price, and that "upon any breach of said condition, the license to use and vend this record, implied from such sale, immediately terminates."

[3] The proper construction of this contract, it seems to me, is that it is not an absolute sale or entitled to be spoken of without limitation as a sale, so that there is no attempt to accompany what is

[1] For decision on merits, see Henry v. A. B. Dick Co., 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645.

really a perfect sale, by conditions which are repugnant and therefore inoperative. Whether, on the other hand, it is called a sale upon condition subsequent, or a terminable license, is not important for the purpose of this inquiry. If called by either name, it is clear that the patentee has not parted with the dominion over his property and put it into unrestricted circulation. The language used in the contract and in the notice in this case seems fully as effective for complainant's purpose as the language used upon the plates or machines in Heaton-Peninsular Co. v. Eureka Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728.

In this case, it appears that the stock of a presumably authorized dealer in such records had been damaged by fire; that some of the cartons were smoked and blackened and others more seriously injured; that the stock was abandoned to an insurance company which took it over; that the insurance company sold the stock to a salvage company; and that this latter company sold to defendant the records in question. Some of them were then in the original cartons and some had been replaced in blank cartons. The defendant does not deny having full knowledge of the general system pursued by complainant; and, indeed, in its advertisement offering the records at cut prices, it expressly stated that the prices were restricted by contract, "as every owner of a talking machine knows." The case, therefore, does not present any question as to the rights of one who purchased in ignorance of the price restriction; and if it is, as I think, the true theory that such a condition as this is a license condition attaching to the article and not merely a personal covenant by the first purchaser, it makes no difference that the defendant never had any direct dealings with complainant. There is, nevertheless, in a proper sense, privity between them, as to this condition. Whether the language in question effectively operates in this way after the article has once reached the ultimate user and has been used is a question not presented by this record, and which may not be, in all material respects, the same question as the present one.

The importance, to the patentee, of maintaining the fixed prices. is apparent, and I do not see that any controlling question of public interest or public policy is involved. Under this system, the patentee sells at such a price that the retail dealer can afford to sell the ordinary record for thirty-five cents. Except for the fact that there is a continuing volume of sales maintained at that price, and if it was compelled to compete with last season's records at any price, the patentee might find his current sales greatly reduced and be obliged to double his prices in order to realize the same profit. This may or may not be the situation, but the fact that this may be true shows that there is no inherent impropriety in the system.

[4] It is urged that the sales were made and the licensed conditions inaugurated, not by the patentee, but by a licensee. The bill alleges that the complainant, as licensee, held under a grant of exclusive right to make, use, and sell the patented invention throughout the United States. Under such a grant, there is no difference, so far as this question is concerned, between patentee and licensee. The opinion in

Ingersoll **v.** Snellenberg (C. C.) 147 Fed. 522, holding that such restrictions are not valid when imposed by a licensee, seems to rest upon the idea that the license there in question was not shown to be exclusive so as to supersede the rights of the patentee.

[5] Defendant also urges that the patent in suit, No. 880,707, does not appear to have been adjudicated, and is a recent patent upon which preliminary injunction should not rest. If this point could be maintained regarding an article created under the patent, the question is not sufficiently raised by the record. Defendant, by its answer, formally questions the validity of the patent, but makes no showing whatever which has a tendency to dispute the legal presumption of validity. Under such circumstances, that legal presumption, with so much of public acquiescence as appears by the bill, is sufficient.

A more serious question is presented by the fact that apparently some of the records in question were manufactured before the issue of the patent in suit. Complainant urges that these license conditions may properly be applied to articles manufactured and put out while the patent application is pending and may be indirectly enforced in an infringement suit based upon the patent later issued; but, upon the argument, complainant proposed to file an amended bill or a further bill, based also upon another patent, issued before these articles were manufactured. The filing of such a bill would apparently obviate this question.

The restraining order will be continued for one week, and, upon the filing of such amended bill (unless the defendant shall wish further hearing on the new allegations thereof), a preliminary injunction will issue as prayed.