FORD MOTOR CO. v. UNION MOTOR SALES CO. et al.

(District Court, S. D. Ohio, W. D. December 4, 1914.)

No. 2147.

1. PATENTS ⬥216—RIGHTS OF PATENTEE—PRICE RESTRICTION ON RESALE OF PATENTED ARTICLE.

Where the owner of a patent sells a machine made by him thereunder, and receives therefor the full price asked, and all that he expects to receive, he has fully exercised the exclusive right to sell given him by the patent laws, so far as relates to the particular machine sold, and cannot legally fix the price at which it may be resold by the purchaser.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. ⬥216.]

2. PATENTS ⬥216—SALE OF PATENTED ARTICLE—CONTRACTS RESTRICTING PRICE ON RESALE—VALIDITY.

Complainant manufactures automobiles under its own patents and sells the same to dealers, receiving therefor the prices it has fixed; but by contracts with such dealers it is provided that the machines will be

.resold by them at complainant's full advertised list prices only, and that a violation of such provision shall constitute an infringement of the patents, subject the dealer to the payment of a fixed sum as damages, and authorize a cancellation of the contract; also that title to the particular machine or machines so sold shall revert to complainant. There is a further provision reserving title in complainant until full payment of the purchase price. *Held*, that such a contract is one of sale of the machines, and not of the right to sell, that on full payment of the purchase price of a machine it passes beyond the patent monopoly, and that in so far as the contract attempts to fix the price at which only it may be sold thereafter it is illegal, as in restraint of trade and unenforceable.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. ☞216.]

In Equity. Suit by the Ford Motor Company against the Union Motor Sales Company, Lucien A. Soward, J. Carl Horton, Earl Saunby, and William T. S. Yocum. Decree for defendants.

Lucking, Helfman, Lucking & Hanlon, of Detroit, Mich., and Alfred M. Allen, of Cincinnati, Ohio, for complainant.

Judson Harmon, of Cincinnati, Ohio, for defendants.

HOLLISTER, District Judge. The complainant, Ford Motor Company, a manufacturer of automobiles under its own patents, seeks by this suit to restrain the defendants from representing that they can, or will, procure for sale Ford automobiles at a price less than the regular price list of the complainant; from conducting, or attempting to conduct, any business in Ford automobiles; from infringing directly, or indirectly, the complainant's patents or "license restrictions and price restrictions"; from combining among themselves, or with others, to infringe complainant's patents by breaking its price restrictions; from conspiring with any of complainant's "dealers-licensees or subdealers-licensees or salesmen"; from procuring or obtaining any Ford automobiles at less than the complainant's list prices; and from interfering with the complainant's business, or with the business of any of its "dealers-licensees or subdealers-licensees."

It was proved that defendants obtained Ford machines from a dealer or dealers, and sold them and advertised them for sale at less than complainant's regular price list. The rights of the parties depend upon the construction to be given the written contracts entered into between the complainant and its so-called "dealers-licensees." No case involving a contract precisely like the agreement between the complainant and the dealers who sell the cars made by it, and covered by its patents, has been presented to the Supreme Court. An agreement by a patentee giving to another a license to manufacture under the patent and to sell at a fixed price on a small royalty has been held not to come within the condemnation of the Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209). Bement v. Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058. It is conceded that contracts, such as made by the complainant in this case with its dealers, would, were it not for the fact that the article sold was made by the complainant under its patents, be contrary to public policy

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under the decision in Dr. Miles Medical Co. v. Park, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502. It is claimed, however, that since the complainant manufactures its cars under its own patents it has the right to maintain its monopoly of the exclusive right to sell, granted by the patent laws, by a contract of sale with its dealers fixing the price on resale at which the dealers may sell to the user, although by so doing the competition between its dealers is thereby effectually prevented.

The contract in this case and the license contract to which the Supreme Court have given their approval are not in terms the same. If they involved the same principles, the conclusion must necessarily be that the contract involved here is neither contrary to public policy nor in contravention of the Anti-Trust Act, because the patentee, having the exclusive right or monopoly to sell, has by this contract only exercised the right given him by the patent laws of the United States. There is, however, a marked difference in the facts, for in this case the patentee is the maker, and does not receive a royalty, but actually sells each machine for a price fixed by itself, and is paid by the dealer all that the maker asks for the article sold. There is no question of use, or restricted use, in this case, as in Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, for the contract is either a complete sale of the exclusive right to sell, given the complainant by the patent laws, or a license to sell, which involves a reservation of some part of the exclusive right to sell, or, as contradistinguished from these, amounts to a sale by the patentee itself.

[1] For the purposes of this case it may be assumed that if the contract partakes of the quality of a sale of the exclusive right to sell, or of a license to sell, it is a good contract, which the complainant may legally enter into with its dealers, and, under the facts proved in this case, an injunction must issue against the defendants. But if, under the terms of the contract, the complainant has sold the automobiles made by it and delivered the same to its dealers, passing the title upon receipt of the contract price, then, under the decisions of the Supreme Court and on principle, the conclusion, in my judgment, must be that by such sale the complainant has exercised its exclusive right to sell, so far as the particular commodity sold is concerned, and cannot legally fix the price at which the dealer shall resell. The contract does not deal with the use of the automobile sold. Hence to call it a contract for "restricted use" is a misnomer, and the adoption of such a definition is, as said by Mr. Justice Day, "a mere play upon words." Bauer v. O'Donnell, 229 U. S. 1, 16, 33 Sup. Ct. 616, 619, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150.

Counsel for the complainant say that the sale is conditional; that it is a restricted sale, and that it is a license to sell on condition. It is immaterial what the contract may be called, but its purpose and effect must be ascertained. Before proceeding to that end it may be well to consider what it is a patentee gets by the statutes which embody every right acquired by him. It was said in Adams v. Burks, 17 Wall. 453, 456, 21 L. Ed. 700:

"The right to manufacture, the right to sell, and the right to use are each substantive rights, and may be granted or conferred separately by the patentee."

· Perhaps as strong an illustration of the right of the patentee to qualify or restrict the use to which, upon sale, the patented article may be put, is shown in the case of Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880. This went so far as to hold that the patentee of a machine, which in its operation involved other articles, could limit its use to such other articles furnished by himself, though they themselves were not patented, and that he could do this by a mere notice upon the machine itself, which was binding upon a third person, who, with knowledge of the notice, sold such other articles to the vendee for use upon the machine, and who, by so doing, became a contributory infringer. The patentee, having the exclusive right to use, which contemplates the entire use, may sell the entire use, or sell a part of it only, or sell on condition of use in a particular way. It necessarily follows from these decisions that he may restrict, or qualify, his exclusive right to make or sell.

The question in this case is whether or not the patentee, having the exclusive right to sell, has, by these contracts, conferred that right, either wholly or in part, or has done something else which is of such character as to involve other rights vested by the common law or statute in the public; for, while the patentee has the "*exclusive* right to make, use, and vend the thing patented, and consequently to prevent others from exercising like privileges without the consent of the patentee" (Bauer v. O'Donnell, 229 U. S. 1, 10, 33 Sup. Ct. 616, 617, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150, citing Bloomer v. McQuewan, 14 How. 539, 549, 14 L. Ed. 532, and Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 425, 28 Sup. Ct. 748, 52 L. Ed. 1122), yet, if what the complainant has done, or attempted to do, by these contracts with its dealers, amounts to something more than the exercise of the exclusive right to sell, it has, by such act, added to and extended its exclusive right to sell, and has thereby brought itself within the condemnation of rules and laws established and enacted for the protection of the public against monopolies and contracts in restraint of trade. This a patentee cannot do, because, while the purposes in granting these rights to the inventor should, as said by Mr. Justice Day in the Sanatogen Case, 229 U. S. 1, 10, 33 Sup. Ct. 616, 617, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150, "be fairly or even liberally construed; yet, while this principle is generally recognized, care should be taken not to extend by judicial construction the rights and privileges which it was the purpose of Congress to bestow." And he says further (229 U. S. 11, 33 Sup. Ct. 617, 57 L. Ed. 1041, 50 L. R. A. [N. S.] 1185, Ann. Cas. 1915A, 150):

"Recognizing that many inventions would be valuable to the inventor because of sales of the patented machine or device to others, it granted also the exclusive right to vend the invention covered by the letters patent. To vend is also a term readily understood and of no doubtful import. Its use in the statute secured to the inventor the exclusive right to transfer the title for a consideration to others. In the exclusive rights to make, use and vend, fairly construed, with a view to making the purpose of Congress effectual, reside the tent of the patent monopoly under the statutes of the United States."

Regard must be had to the nature of the article dealt with in the contract. It was settled long ago that when a patentee sells the patented article, which is valuable only for the use to which it may be put, he receives the consideration for its use and parts with the right to restrict the use. An automobile has value only in its use, and if the inventor, who is also the manufacturer, sells it for such price as pleases him, without restrictions on the use, he will have exercised his exclusive right to sell. It was said by Mr. Justice Miller in Adams v. Burke, 17 Wall. 453, 456, 21 L. Ed. 700:

"But, in the essential nature of things, when the patentee, or the person having his rights, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly. That is to say, the patentee or his assignee having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentees."

But if it is urged that in Henry v. Dick the patentee really received upon the sale of the patented article the price he asked, the title passing, and was therefore no longer concerned with the use to which the article might be put, upon the principle of the case just cited, it will be sufficient to call attention to a part of the language of Mr. Justice Day in the Sanatogen Case, when stating what the decision in the case of Henry v. Dick was (229 U. S. 14, 15, 33 Sup. Ct. 619 [57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150]):

"It is expressly stated in the opinion that the machine was sold at cost or less and that the patentee depended upon the profit realized from the sale of the non-patented articles to be used with the machine for the profit which he expected to realize from his invention." And "While the title was transferred, it was a qualified title, giving a right to use the machine only with certain specified supplies."

It would seem that the decision in Henry v. Dick should be regarded as applying to the particular facts involved in the case, and not as the declaration of a principle. Indeed (as Mr. Justice Day shows), in the opinion in that case Mr. Justice Lurton distinguishes the case from Bobbs-Merrill v. Straus, hereinafter referred to, by saying (224 U. S. 47, 32 Sup. Ct. 379 [56 L. Ed. 645, Ann. Cas. 1913D, 880]):

"There is no collision whatever between the decision in the Bobbs-Merrill Case and the present opinion. Each rests upon a construction of the applicable statute, and the special facts of the cases."

One cannot fail to notice also Mr. Justice Day's remarks about the Bement Case, which complainant cites as conclusive authority for the propriety of its contract. Among other things, he says (229 U. S. 14, 33 Sup. Ct. 618 [57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150]):

"The case was one arising upon license agreements, originating in a state court, and did not involve the construction of the patent act in the circumstances now disclosed"

—language which would seem to indicate that no principle was intended to be announced in that case different from the long-established

rule that, when the patentee of the article had received upon sale his price, the article being valuable to the purchaser because of its use, it passed beyond the limits of the patentee's monopoly.

The facts here show no license, no sale of the exclusive right to sell, no sale in which the patentee looks to his profits in future sales, or in any use to which the article sold may be put by its purchaser. There seems to me no doubt about this. Therefore, there being no restrictions in the contract of sale upon the use, as there were in the case of Henry v. Dick, has the complainant, by selling the article to the dealer, receiving all for it that he ever will receive, and the price being satisfactory to him, exercised, with respect to the machine sold, the exclusive right to sell granted to him, bearing in mind what the article is and the usual attributes of a sale of a chattel?

[2] In the contract in question, the so-called "dealer-licensee" is given a restricted right to use and vend, within certain described territory, automobiles made by the patentee, is required to estimate the number of cars "that he will purchase" from the patentee in each of the various months covered by the agreement, and upon failure to purchase the agreed upon number the patentee had the right to cancel the agreement. Each machine is sold by the patentee at a discount of 15 per cent. of its current advertised list price, "and will be resold by the Dealer-Licensee in the above-described territory only, at the Manufacturer-Licensor's full advertised list prices only, current at date of sale. * * *" The Dealer-Licensee agrees not to—

"do or permit any act whatsoever either directly or indirectly or through another party, as would directly or indirectly have the effect of reducing the said current advertised list prices of Ford automobiles, * * * and in the event of a breach, violation or infringement of the provisions of this clause the Manufacturer-Licensor shall have the right at its option to immediately terminate this agreement, but in any event, the Dealer-Licensee shall pay to the Manufacturer-Licensor the sum of two hundred fifty dollars ($250.00) for every such breach, violation or infringement, such sum being the agreed damage the Manufacturer-Licensor will sustain."

Provision is made for a rebate of, certain percentages on the net amount of resales made. It was agreed that the dealer-licensee should be restricted, not only to the territory specified in the agreement, but, on resale, to the price—

"made at the current advertised Ford list prices, * * * and that any violation of such territorial or price restrictions shall be and constitute an infringement of such Ford patents and each of them; and in addition thereto it is also agreed that in case of any such infringement or breach of such restrictions, or any of them, the title to the particular car or cars sold in violation of such restrictions, or any of them, shall at once revert to the Ford Motor Company. The foregoing provisions are in addition to all other remedies and damages and penalties herein provided for."

This provision is also found:

"It is expressly agreed that the legal title to all automobiles sold or delivered by the Manufacturer-Licensor to the Dealer-Licensee hereunder shall be and remain in the Manufacturer-Licensor until the full purchase price thereof * * * shall be paid in money to the credit of the Manufacturer-Licensor, * * * with full and complete power and authority hereby vested in said Manufacturer-Licensor, in case of default in payment of money by the Dealer-Licensee, regardless of how the amount thereof may be evidenced, to retake,

with or without process of law, into its custody and possession said automo
biles and the same permanently retain, and all liability from said Manufac-
turer-Licensor to said Dealer-Licensee on the contract for the sale and delivery
of such automobiles, shall in such case cease and terminate."

The contract is of great length, with many provisions; but these seem to be sufficient to present the question with which we are concerned. This reservation of title is a familiar method of securing the purchase money, but when the purchase money is paid the title passes. This is recognized by the contract itself, in providing that, upon a resale by the dealer at less than the complainant's list price, the title shall revert to the complainant. It is quite clear that this is not an agreement to pay royalties, for the patentee actually sells the automobile manufactured by it at a price satisfactory to it. No matter how many machines the dealer-purchaser sells to users, the manufacturer-patentee receives on each machine the entire sum for which he is willing to part with it and to transfer title.

If a patentee sells a machine made by him under his patents, and obtains for it all he asks, what further rights has he under the patent laws? Having the exclusive right to sell, he sells and gets his price. With respect to the machine sold he has exercised his right to sell. It was said in Chaffee v. Belting Co., 22 How. 217, 223, 16 L. Ed. 240:

"When the patented machine rightfully passes to the hands of the purchaser from the patentee, or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly. According to the decision of this court in the cases before mentioned, it then passes outside of the monopoly, and is no longer under the peculiar protection granted to patented rights. By a valid sale and purchase, the patented machine becomes the private individual property of the purchaser, and is no longer protected by the laws of the United States, but by the laws of the state in which it is situated."

There is a difference between an agreement conveying the exclusive right given by the patent laws to sell the patented article and a sale by the patentee of the article itself. In the one case, the patentee grants the right to sell. In the other, he himself sells. If he grants to another the right to sell, then he has parted with the exclusive right he had under the patent laws. No doubt he could make such a grant for a lump sum, large or small, as he chose, or take his pay on a fixed royalty or percentage on sale; and, under the Bement Case, 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058, he might fix the price at which his vendee of the right could sell. But, having the exclusive right to sell, these methods of payment for the right and the restrictions as to price of sale would be but qualifications and conditions upon which the right to sell was granted. If the patentee's right to sell was transferred on condition that the transferee of the right could sell the article itself only at a price fixed by the patentee, it might be said the right conveyed was not complete, but was qualified and conditional, and this would be coming very close to the Bement Case.

It seems to me that there is confusion in the minds of many between this exclusive right to sell the patented article granted by the manufacturer-patentee, and a sale of the article itself by the manufacturer-patentee. If the patentee himself makes a sale of the article made by

him under the patent, and gets his price, the transaction partakes of all of the-characteristics of a sale of a chattel. If he sells only the right·to sell the article, he may retain something of the complete right he has by restricting the terms under which sales may be made. If he makes no such restrictions, then, of course, the grantee of the right may himself fix the price at which sales shall be made by him.

This contract does not give the vendee the right to sell. It sells to him the article, and attempts to give him the right to resell. He buys. The manufacturer-patentee sells the product to him, and then seeks to control the price at which he shall resell. If, upon payment by the dealer of the purchase price, the title of the machine passes to him, how can it be taken away because the user, to whom the dealer has sold, has paid a less price than the list price? See opinion of Judge Ray in Waltham Watch Co. v. Keene (D. C.) 202 Fed. 225, 234, et seq.

There are cases sustaining such contracts as these, all of which were decided prior to the Sanatogen Case. In National Phonograph Co. v. Schlegel (C. C. A. 8th) 128 Fed. 733, 64 C. C. A. 594, the decision is squarely to the point, and was written by Judge Van Devanter, who now, as Justice of the Supreme Court, dissents from the decision of the majority in the Sanatogen Case. And it is quite significant that Judge Denison, then of the District Court, in Edison v. Smith Mercantile Co. (C. C.) 188 Fed. 925, while upholding such a contract under the authorities as they existed at that time, said (page 926):

"Several courts have recognized a tendency to go too far in sanctioning such conditions, and some recent decisions in the Second Circuit, as well as the opinions of the Supreme Court in the Bobbs-Merrill Case, 210 U. S. 339 [28 Sup. Ct. 722, 52 L. Ed. 1086], * * * and the Dr. Miles Case, 220 U. S. 373 [31 Sup. Ct. 376, 55 L. Ed. 502], * * * and the granting of the pending certiorari in the Dick Case, 224 U. S. 1 [32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880], * * * have tended to indicate that some limits will be placed upon the now customary practice."

What that learned judge would have done, if the Sanatogen Case had been decided, cannot, of course, be said; but it is evident he felt constrained to the conclusion he reached by the decisions theretofore rendered.

Judge Hazel in Ford Motor Co. v. International Automobile League et al. (D. C.) 209 Fed. 235, draws the conclusion that the principle enunciated in the Sanatogen Case and in Bobbs-Merrill v. Straus was applicable to these very contracts, assuming that the dealers, who sold to the defendants in that case, "were the full owners thereof, having paid for the same in accordance with the terms of the license, and therefore were not merely in possession under the ordinary conditional contract of sale."

So far as appears in the case under consideration here, the dealers, from whom the defendants purchased, had paid the complainant for the cars; but whether they had or not seems to me of no consequence, because, when the purchase price was paid to the complainant, the title passed to the dealer, as said hereinbefore. That such contracts as these would not now be sanctioned seems quite clear from the views of the

majority of the Supreme Court expressed in the Sanatogen Case, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150. In that case the Bauer Chemical Company was the sole agent and licensee for the sale of an albuminoid known as "Sanatogen," covered by letters patent of the United States. The agreement provided that the agent and licensee should have power to fix the price of sale to wholesalers, distributors, retailers, and the public, the product to be furnished the Chemical Company at manufacturer's cost, and the net profits to be divided equally by the parties. On each package was the following:

### "Notice to the Retailer.

"This size package of Sanatogen is licensed by us for sale and use at a price not less than one dollar ($1.00). Any sale in violation of this condition, or use when so sold, will constitute an infringement of our patent No. 601,995, under which Sanatogen is manufactured, and all persons so selling or using packages or contents will be liable to injunction and damages.

"A purchase is an acceptance of this condition. All rights revert to the undersigned in the event of violation. The Bauer Chemical Co."

The proprietor of a drug store purchased for his retail trade from the Bauer Company original packages of Sanatogen bearing that notice. He sold them at retail at less than $1, and, without the license or consent of the Bauer Company, purchased from jobbers, who had theretofore purchased from the Bauer Company, original packages of Sanatogen with the notice affixed, and sold them at retail at less than the price fixed in the notice, and expressed the intention of continuing such sale. The question for decision by the Supreme Court was: May a patentee by notice limit the price at which future retail sales of patented articles may be made; such articles being in the hands of a retailer by purchase from a jobber who has paid to the agent of the patentee the full price asked for the article sold?

I have already referred to some of the remarks of Mr. Justice Day in that case. He discussed the decision in Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 28 Sup. Ct. 722, 52 L. Ed. 1086. There the owner of a copyright of a book undertook to limit the price of the book for sale at retail by a notice on each book fixing the price at $1, stating that no dealer was licensed to sell for less, and that a sale at a less price would be treated as an infringement of the copyright. The Supreme Court decided that the copyright statute, in securing to the holder of the copyright the sole right to vend copies of the book, conferred a privilege which, when the book was sold, was exercised by the holder, that the right secured by the statute was thereby exhausted, and that the owner of the copyright could not, by a mere notice, fix such a limitation of price on resale, as was attempted in that case. Mr. Justice Day applied the principle of that case to a notice on a patented article, interpreting the right to vend in the copyright statute and in the patent statute as the same.

While in each of these cases the court limited its decision to the facts in each, and denied the right by a holder of a copyright and the patentee of a patented article, after receiving the price at which he was willing to sell the book in the one case and the patented article in the

other, and did sell, to fix, by a mere notice on the book or patented article, the price for future sales of the same, and expressly withheld an expression of opinion upon the effect of fixing the price for resales by the vendee in case of license or contract covering copyrighted articles in the one case and patented articles in the other, yet the language in each of these cases points directly to the view that when the patentee of a patented article sells the article made by him under the patent for a price at which he is willing to sell, and receives the price, he has, as to that article, received all to which he is entitled under the patent laws. That principle underlies these decisions.

The conclusions in the Bobbs-Merrill Case and the Sanatogen Case were the result of a construction by the court of the copyright and the patent statutes; that is to say, involved a determination of what rights are conferred by those laws. As I read those decisions, the court say (quite irrespective of the difference, if there is any, between fixing the price for future sales by the vendee by notice on the article, or by contract of which third persons have knowledge) the right in a patentee to sell the patented article itself is, in either case, exhausted when he sells the article and has received his price.

But is there any difference between an attempt to fix the price of future sales by notice, and an attempt to fix the price by contract? A notice is effectual to bind the one who receives it, when he takes the article to which it is attached with knowledge of the condition. Railroad v. Fraloff, 100 U. S. 24, 27, 25 L. Ed. 531; The Majestic, 166 U. S. 375, 384, 17 Sup. Ct. 597, 41 L. Ed. 1039; Gaines v. Transportation Co., 28 Ohio St. 418.

The license in the Dick Case, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, read:

"This machine is sold by the A. B. Dick Co. with the license restriction that it may be used only with the stencil paper, ink and other supplies made by A. B. Dick Company, Chicago, U. S. A."

The defendant, and the purchaser who sold to her a can of ink made by some other than the A. B. Dick Co., both had knowledge of the restriction attached to the machine. It was there said by Mr. Justice Lurton (224 U. S. 12, 32 Sup. Ct. 365 [56 L. Ed. 645, Ann. Cas. 1913D, 880]):

"It is not denied that she accepted the machine with notice of the conditions under which the patentee consented to its use. Nor is it denied that thereby she agreed not to use the machine otherwise."

And in the Sanatogen Case, in the notice fixing the price was printed:

"A purchase is an acceptance of this condition. All rights revert to the undersigned in the event of violation."

There can be no doubt that the defendant in that case knew of the condition and attempt to impose the restriction upon him; for, in the certified facts, it appears he sold the Sanatogen at less than the price fixed in the notice, and averred that he would continue such sales.

If the patentee's exclusive right to sell is exhausted by a sale, the Supreme Court say he cannot, by a mere notice attached to the patented

article, though brought home to the purchaser, add to or extend his right by fixing the price at which his vendee shall sell the same article. It must therefore be true that if the patentee had, by a sale of the article and the receipt of his price for it, passed the title to another, he cannot enlarge or extend that right by contract, or in any other way, for he has parted with what he had. And when he seeks to fix the price at which his vendee shall sell, he brings into operation other laws and policies which conflict with such attempt— rules against restraints on alienation; the common law against restraints of trade and monopolies, and the Sherman Anti-Trust Law against contracts, conspiracies, and combinations to restrain trade, and to monopolize or attempt to monopolize the same. When the complainant sold an automobile under one of these contracts, and received the price, the title passed to the purchaser, and no sale by the purchaser to another could cause a reverter of the title to the complainant; for, in the complete exercise of his right to sell, he sold, and the subject of sale passed without the limits of the monopoly.

The Supreme Court in Standard Sanitary Mfg. Co. v. United States, 226 U. S. 20, 33 Sup. Ct. 9, 57 L. Ed. 107, held that a trade agreement involving the right of the parties to it to use a certain patent, which transcends what is necessary to protect the use of the patent or the monopoly conferred by law, and which controlled the output and price of goods manufactured by all who use the patents, was illegal under the Anti-Trust Act of 1890. It was said in that case by Mr. Justice McKenna (226 U. S. 49, 33 Sup. Ct. 15 [57 L. Ed. 107]):

"Rights conferred by patents are indeed very definite and extensive, but they do not give any more than other rights an universal license against positive prohibitions. The Sherman law is a limitation of rights, rights which may be pushed to evil consequences, and therefore restrained."

The purpose of complainant's contracts with its dealers is to prevent competition between its dealers, each of whom has paid it all it asked. The vice in them is that the patent law does not confer power on the patentee to prevent competition among those who have purchased the patented article from him. I am therefore of opinion that these contracts (the opinion being restrained to the facts in this case) are invalid, and that the defendants in causing them, or attempting to cause them, to be broken, have done the complainant no wrong cognizable by the law.

An order may be taken dismissing complainant's bill, at its costs.