### BAUER & CIE v. O'DONNELL.

CERTIFICATE FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 951. Argued April 10, 1913.—Decided May 26, 1913.

The right to make, use and sell an invented article existed without, and before, the passage of the patent law; the act secured to the inventor the exclusive right to make, use and vend the thing patented.

While the patent law should be fairly and liberally construed to effect the purpose of Congress to encourage useful invention, the rights and privileges which it bestows should not be extended by judicial construction beyond what Congress intended.

In framing the patent act and defining the rights and privileges of patentees thereunder Congress did not use technical or occult phrases, but in simple terms gave the patentee the exclusive right to make, use and vend his invention for a definite term of years.

A patentee may not by notice limit the price at which future retail sales of the patented article may be made, such article being in the hands of a retailer by purchase from a jobber who has paid to the agent of the patentee the full price asked for the article sold. *Henry v. Dick Co.*, 224 U. S. 1, distinguished.

The patent law differs from the copyright law in that it not only confers the right to make and sell, but also the exclusive right to use the subject-matter of the patent.

The words "vend" and "vending" as used in § 4952, Rev. Stat., in regard to the copyright protection accorded authors and as used in § 4884, Rev. Stat., in regard to the protection accorded inventors for their patented articles, are substantially the same, and the protection intended to be secured to authors and inventors is substantially identical.

While *Bobbs-Merrill Co. v. Straus,* 210 U. S. 339, recognized that there are differences between the copyright statute and the patent statute, and disclaimed then deciding the effect of the word "vending" as used in the latter, this court now decides that the terms used in regard to the protection accorded by both statutes in regard to the exclusive right to sell are to all intents the same.

The right given by the patent law to the inventor to use his invention should be protected by all means properly within the scope of the statute, and the patentee may transfer a patented article with a qualified title as to its use. *Henry* v. *Dick Co.,* 224 U. S. 1.

Where the transfer of the patented article is full and complete, an attempt to reserve the right to fix the price at which it shall be resold by the vendee is futile under the statute. It is not a license for qualified use, but an attempt to unduly extend the right to vend. *Henry* v. *Dick Co.,* 224 U. S. 1, distinguished.

While the patent law creates to a certain extent a monopoly by the inventor in the patented article, a patentee who has parted with the article patented by passing title to a purchaser has placed the article beyond the limits of the monopoly secured by the act. *Adams* v. *Burke,* 17 Wall. 453.

THE facts, which involve the construction of § 4884, Rev. Stat., and the extent of the rights thereunder of patentees to control the price at which the patented article shall be sold by their vendees, are stated in the opinion.

*Mr. Edwin J. Prindle* for plaintiffs-appellants:

The inventor has the right to exclude every one from any making, using, or selling of the patented invention. Therefore, when he grants any right under the patent to anyone, he simply waives his right to exclude them from all making, using, or selling of the patented invention to that extent, and all ungranted right of exclusion remains in him.

A notice of price restriction on a package is notice to all the world that the right to sell the article below the price stated on the package is not granted and does not pass from the inventor.

Defendant's sale at a retail price below the amount named, of packages bought from jobbers and having the license restriction label on them, was an infringement.

Price restrictions have been sustained in this court and in the lower Federal courts. *Mitchell* v. *Hawley*, 16 Wall. 544; *Henry* v. *Dick*, 224 U. S. 1; *Bement* v. *National Harrow Co.*, 186 U. S. 70.

The right of a patentee to restrict the price at which his article shall be sold by a license-restriction-notice attached to the article, of the same import as the notice in the present case, has been sustained by many of the lower courts in the United States and by the courts of England. *Victor Talking Machine* v. *The Fair,* 123 Fed. Rep. 424; *New Jersey Patent Co.* v. *Schaefer*, 144 Fed. Rep. 437; *Rubber Tire Wheel Co.* v. *Milwaukee R. W. Co.*, 154 Fed. Rep. 358; *Goshen Rubber Works* v. *Single Tube A. & B. Tire Co.*, 166 Fed. Rep. 431; *Edison* v. *Ira M. Smith Co.*, 188 Fed. Rep. 925; *Waltham Watch Co.* v. *Keene*, 191 Fed. Rep. 855; *Automatic Pencil Sharpener Co.* v. *Goldsmith Bros.*, 190 Fed. Rep. 205; *Indiana Mfg. Co.* v. *Nichols*, 190 Fed. Rep. 579; *Incandescent Gas Co.* v. *Cantelo*, 12 Rep. Pat. Cas. 262; *Same* v. *Brogden*, 16 Rep. Pat. Cas. 183; *Badische Analin &c.* v. *Isler* (1906), 1 Chancery, 611; *McGruther* v. *Pitcher* (1904), 2 Chancery, 306; *National Phonograph Co.* v. *Mench*, 27 T. L. R. 239; *The B. V. D. Co.* v. *Wolf* (unreported); *The Fair* v. *Dover Mfg. Co.*, 166 Fed. Rep. 117; *Edison Phonograph Co.* v. *Kaufmann*, 105 Fed. Rep. 960; *Edison Phonograph Co.* v. *Pike*, 116 Fed. Rep. 863; *National Phonograph Co.* v. *Schlegel*, 128 Fed. Rep. 733; *Ingersoll* v. *Shellenberg*, 147 Fed. Rep. 522; *Winchester Arms Co.* v. *Buengar*, 199 Fed. Rep. 786; *American Graphophone Co.* v. *Pickard*, 201 Fed.

Rep. 546; *Lovell-McConnell Co.* v. *International Automobile League*, 202 Fed. Rep. 219.

Many of the foregoing cases are identical, in principle, with the facts in the present case.

The patentee's control over selling was recognized by this court in *Henry* v. *Dick*, 224 U. S. 1.

The right of the patentee to restrict the price at which his article shall be sold comes within the principle decided in *Henry* v. *Dick*, and the defendant in this case is a contributory infringer precisely as Henry was in that case.

The patentee's monopoly of selling is coördinate with that of using his patented article and subject to the same degree of control. *Adams* v. *Burke*, 17 Wall. 453; *Bement* v. *National Harrow Co.*, supra; *Standard Sanitary Co.* v. *United States*, 226 U. S. 20.

Plaintiffs did not receive the full consideration for the patented article when they received the purchase money from the defendant or the jobber, and they have a continuing interest in the article.

Patentee's control over the price of his article is reasonable, proper and consistent with sound public policy.

Defendant's purchase from jobber instead of from plaintiffs does not relieve him from infringement, as he had notice through the price restriction on the label. *Victor Talking Machine Co.* v. *The Fair*, 123 Fed. Rep. 427; *New Jersey Patent Co.* v. *Schaefer*, 144 Fed. Rep. 437; *S. C.*, 159 Fed. Rep. 171; *Edison* v. *Smith*, 188 Fed. Rep. 925; *Automatic Pencil Co.* v. *Goldsmith*, 190 Fed. Rep. 205.

The *Waltham Watch Case*, 191 Fed. Rep. 855, has no bearing on the case at bar, and the language quoted had no reference to the distinction in the present case. So also as to the *Folding Bed Case*, 147 U. S. 659.

There is no attempt in this case at monopoly or to restrict trade. The patentee only seeks to control the price

of an article in an industry which he himself has created,
and in which the public has had no previous rights or
experience of free competition in the article. The public
is just as free to purchase unpatented articles as it ever
was, and the monopoly which the law gives the patentee
is only the inducement which it held out to the patentee
to make the invention and the just and proper price paid
for his contribution of it forever to public knowledge at
the expiration of the monopoly.

The defense based on the copyright statute and *Bobbs-
Merrill* v. *Straus*, 210 U. S. 339, does not apply. Judge
Ray in his decision in the *Waltham Watch Case* argues at
length that as the Supreme Court in the *Bobbs-Merrill
Case* held that an author has no right to fix the price at
which his book should be resold, it follows that an in-
ventor is also without that right.

This court in that case expressly refused to express an
opinion as to whether, under the state of facts in the
present case, its decision would be the same as it was in
that case.

These three separate rights of making, using and selling
granted the inventor by the patent statute have always
been treated as coördinate rights and never been treated
as of different rank.

The right to sell is always treated as coördinate with
the right to make and use in the patent cases, while as de-
cided in the *Bobbs-Merrill Case,* the right to sell under the
copyright statute is merely incidental to the right of
duplication.

There are vital differences between the right to vend
of the inventor and the right to vend of the author. And
because of the differences in the nature of a patented
article and an author's book, there are vital differ-
ences in what is involved in "vending" under the two
statutes.

The power of an inventor to subdivide the right to vend,

granted by his patent, has been repeatedly upheld. On the other hand, the author can only assign his right as a whole. He could not subdivide the territory in any such way. See *Bobbs-Merrill Case*, 147 Fed. Rep. 23; *Crown Co.* v. *Standard Brewery*, 174 Fed. Rep. 258.

Rights under the patent statute are much broader than those under the copyright statute. The patent statute gives a complete monopoly of the invention. The copyright statute only gives the right of duplicating and the right of vending. "Making" under the patent statute covers every form of the invention which performs the same function in substantially the same way, without regard to appearance.

The patent statute gives the inventor absolute control over the use of the invention and the inventor can forbid its use in any but a particular locality. No author, however, could restrict the reading of his book only to the person who purchases it, or to its being read only in a certain town.

The monopoly granted to the inventor is very much more extensive than that granted to the author, and the scope of "vending" under the patent statute cannot be measured by the scope of "vending" under the copyright statute. *The Fair* v. *Dover Mfg. Co.*, 166 Fed. Rep. 117; *Automatic Pencil Co.* v. *Goldsmith*, 190 Fed. Rep. 205; *Indiana Mfg. Co.* v. *Nichols*, 190 Fed. Rep. 579; *Edison* v. *Smith*, 188 Fed. Rep. 925; *Waltham Watch Co.* v. *Keene*, 191 Fed. Rep. 855.

The cases cited by defendant, to-wit: *Bloomer* v. *McQuewan*, 14 How. 539; *Adams* v. *Burke*, 17 Wall. 453; *Chaffee* v. *Boston Belting Co.*, 22 How. 217; *Morgan Envelope Co.* v. *Albany Paper Co.*, 152 U. S. 425; *Keeler* v. *Standard Folding Bed Co.*, 157 U. S. 659; *Bement* v. *National Harrow Co.*, 186 U. S. 70, do not sustain his proposition to the effect that a sale of a patented article under a license restriction borne by that article, and known to the pur-

chaser, frees the article from the restrictions. *Patterson* v. *Kentucky*, 97 U. S. 501.

Defendant's right in the physical materials of the packages of Sanatogen which be bought is unquestioned. He has, however, no right to use those materials in violation of the reserved portion of monopoly, namely, to sell the package at a retail price lower than one dollar. *Henry* v. *Dick*, 224 U. S. 1.

Plaintiffs' patent grants them the right to exclude all others from any making, using or selling of the patented invention. In *Henry* v. *Dick*, the right was sustained of a patentee to enjoin others from violation of conditions as to use attached to a sale.

The patentee's control over selling is coördinate and co-extensive with that over using his invention.

Plaintiffs did not receive the full consideration for the patented article when they received the purchase money, and they have a continuing interest in the article.

The patentee's control over the price of his patented article is reasonable, proper and consistent with sound public policy.

This court has recognized the patentee's control over the resale price of his patented article, and such control comes within the principle decided in *Henry* v. *Dick*.

*Mr. Daniel W. Baker,* with whom *Mr. Frank J. Hogan* was on the brief, for O'Donnell, defendant-appellee.

*Mr. Frederick P. Fish* and *Mr. Thomas W. Pelham,* by leave of court and on behalf of the Gillette Safety Razor Company, filed a brief in support of plaintiffs' contention.

*Mr. Horace Pettit,* by leave of court and on behalf of the Victor Talking Machine Company, also filed a brief in support of plaintiffs' contention.

MR. JUSTICE DAY delivered the opinion of the court.

This case is on a certificate from the Court of Appeals of the District of Columbia. The facts stated in the certificate are:

"Bauer & Cie, of Berlin, Germany, copartners, being the assignees of letters patent of the United States, dated April 5, 1898, No. 601,995, covering a certain water soluble albumenoid known as 'Sanatogen' and the process of manufacturing the same, about July, 1907, entered into an agreement with F. W. Hehmeyer, doing business in the City of New York under the trade name of The Bauer Chemical Company, whereby Hehmeyer became and has since been the sole agent and licensee for the sale of said product in the United States, the agreement contemplating that Hehmeyer should have power to fix the price of sale to wholesalers or distributors and to retailers, and to the public. The agreement further contemplated that said product should be furnished Hehmeyer at manufacturing cost, the net profits obtained by him to be shared equally by the parties to the agreement. Since April, 1910, this product has been uniformly sold and supplied to the trade and to the public by the appellants and their licensees in sealed packages bearing the name 'Sanatogen,' the words 'Patented in U. S. A., No. 601,995,' and the following:

"'Notice to the Retailer.

"'This size package of Sanatogen is licensed by us for sale and use at a price not less than one dollar ($1.00). Any sale in violation of this condition, or use when so sold, will constitute an infringement of our patent No. 601,995, under which Sanatogen is manufactured, and all persons so selling or using packages or contents will be liable to injunction and damages.

"'A purchase is an acceptance of this condition. All

rights revert to the undersigned in the event of violation.

THE BAUER CHEMICAL CO.'

."The appellee is the proprietor of a retail drug-store at 904 F Street, N. W., in this city. He purchased of the Bauer Chemical Company for his retail trade original packages of said Sanatogen bearing the aforesaid notice. These packages he sold at retail at less than one dollar and, persisting in such sales, appellants in March, 1911, severed relations with him. Thereupon appellee, without the license or consent of the appellants, purchased from jobbers within the District of Columbia, said jobbers having purchased from appellants, original packages of said product bearing the aforesaid notice, sold said packages at retail at less than the price fixed in said notice, and avers that he will continue such sales."

The question propounded is: "Did the acts of the appellee, in retailing at less than the price fixed in said notice, original packages of 'Sanatogen' purchased of jobbers as aforesaid, constitute infringement of appellants' patent?"

The protection given to inventors and authors in the United States originated in the Constitution, § 8 of Art. I of which authorizes the Congress "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." This protection, so far as inventors are concerned, has been conferred by an act of Congress passed April 10, 1790, and subsequent acts and amendments. The act of 1790, 1 Stat. 109, c. 7, granted "the sole and exclusive right and liberty of making, constructing, using and vending to others to be used, the said invention or discovery." In 1793 (Feb. 21, 1793, 1 Stat. 318, ⌒ 11) the word "full" was substituted for the word "sole," and in 1836 (July 4, 1836, 5 Stat. 117, § 5,

c. 357) the word "constructing" was omitted. This legislation culminated in § 4884 of the Revised Statutes, the part with which we are dealing being practically identical with the act of July 8, 1870, 16 Stat. 198, § 22, c. 230. It provides that every patent shall contain "a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery."

The right to make, use and sell an invented article is not derived from the patent law. This right existed before and without the passage of the law and was always the right of an inventor. The act secured to the inventor the *exclusive* right to make, use and vend the thing patented, and consequently to prevent others from exercising like privileges without the consent of the patentee. *Bloomer* v. *McQuewan,* 14 How. 539, 549; *Continental Paper Bag Co.* v. *Eastern Paper Bag Co.,* 210 U. S. 405, 425. It was passed for the purpose of encouraging useful invention and promoting new and useful improvements by the protection and stimulation thereby given to inventive genius, and was intended to secure to the public, after the lapse of the exclusive privileges granted, the benefit of such inventions and improvements. With these beneficent purposes in view the act of Congress should be fairly or even liberally construed; yet, while this principle is generally recognized, care should be taken not to extend by judicial construction the rights and privileges which it was the purpose of Congress to bestow.

In framing the act and defining the extent of the rights and privileges secured to a patentee Congress did not use technical or occult phrases, but in simple terms gave an inventor the exclusive right to make, use and vend his invention for a definite term of years. The right to make can scarcely be made plainer by definition, and embraces the construction of the thing invented. The right to use is a comprehensive term and embraces within its meaning

the right to put into service any given invention. And Congress did not stop with the express grant of the rights to make and to use. Recognizing that many inventions would be valuable to the inventor because of sales of the patented machine or device to others, it granted also the exclusive right to vend the invention covered by the letters patent. To vend is also a term readily understood and of no doubtful import. Its use in the statute secured to the inventor the exclusive right to transfer the title for a consideration to others. In the exclusive rights to make, use and vend, fairly construed, with a view to making the purpose of Congress effectual, reside the extent of the patent monopoly under the statutes of the United States. *Bloomer* v. *McQuewan, supra,* 549. We need not now stop to consider the rights to sell and convey, and to license others to sell or use inventions, which rights have been the subject of consideration in the numerous reported cases to be found in the books. We are here concerned with the construction of the statute in the aspect and under the facts now presented.

The case presented pertains to goods purchased by jobbers within the District of Columbia and sold to the appellee at prices not stated, and resold by him at retail at less than the price of one dollar fixed in the notice. The question therefore now before this court for judicial determination is: May a patentee by notice limit the price at which future retail sales of the patented article may be made, such article being in the hands of a retailer by purchase from a jobber who has paid to the agent of the patentee the full price asked for the article sold?

The object of the notice is said to be to effectually maintain prices and to prevent ruinous competition by the cutting of prices in sales of the patented article. That such purpose could not be accomplished by agreements concerning articles not protected by the patent monopoly was settled by this court in the case of *Dr. Miles Medical*

*Co.* v. *Park & Sons Co.*, 220 U. S. 373, in which it was held that an attempt to thus fix the price of an article of general use would be against public policy and void. It was doubtless within the power of Congress to confer such right of restriction upon a patentee. Has it done so? The question has not been determined in any previous case in this court, so far as we are aware. It was dealt with under the copyright statute, however, in the case of *Bobbs-Merrill Co.* v. *Straus*, 210 U. S. 339. In that case it was undertaken to limit the price of copyrighted books for sale at retail by a notice on each book fixing the price at one dollar and stating that no dealer was licensed to sell it for less and that a sale at a less price would be treated as an infringement of the copyright. It was there held that the statute, in securing to the holder of the copyright the sole right to vend copies of the book, conferred a privilege which, when the book was sold, was exercised by the holder, and that the right secured by the statute was thereby exhausted. The court also held that it was not the purpose of the law to grant the further right to qualify the title of future purchasers by means of the printed notice affixed to the book, and that to give such right would extend the statute beyond its fair meaning and secure privileges not intended to be covered by the act of Congress. In that case it was recognized that there are differences between the copyright statute and the patent statute, and the purpose to decide the question now before us was expressly disclaimed.

Section 4952, Revised Statutes, a part of the copyright act, secures to an author, inventor, designer or proprietor of books, maps, charts or dramatic or musical compositions the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending them. While that statute differs from the patent statute in terms and in the subject-matter intended to be protected, it is apparent that in the respect involved in the present

inquiry there is a strong similarity between and identity of purpose in the two statutes. In the case of patents the exclusive right to vend the invention or discovery is added to the like right to make and use the subject-matter of the grant, and in the case of copyrights the sole right of multiplying and reproducing books and other compositions is coupled with the similar right of "vending the same." So far as the use of the terms "vend" and "vending" is concerned, the protection intended to be secured is substantially identical. The sale of a patented article is not essentially different from the sale of a book. In each case to vend is to part with the thing for a consideration. It is insisted that the purpose to be subserved by notices such as are now under consideration—keeping up prices and preventing competition—is more essential to the protection of patented inventions than of copyrighted articles; and it is said that the copyrighted article may be and usually is sold for a lump consideration by the author or composer and that he has no interest in the subsequent sales of the work, while patented inventions require large outlays to create and maintain a market. To some extent this contention may be based upon fact, nevertheless it is well known that in many instances the compensation an author receives is the royalties upon sales of his book or a percentage of profits, which makes it desirable that he shall have the protection of devices intended to keep up the market and prevent the cutting of prices. But these considerations could have had little weight in framing the acts. In providing for grants of exclusive rights and privileges to inventors and authors we think Congress had no intention to use the term "vend" in one sense in the patent act and "vending" in another in the copyright law. Protection in the exclusive right to sell is aimed at in both instances, and the terms used in the statutes are to all intents the same.

It is apparent that the principal difference in the enact-

ments lies in the presence of the word "use" in the patent
statute and its absence in the copyright law. An inventor
has not only the exclusive right to make and vend his
invention or discovery, but he has the like right to use it,
and when a case comes fairly within the grant of the right
to use, that use should be protected by all means properly
within the scope of the statute. In *Bement* v. *National
Harrow Co.*, 186 U. S. 70, the owner of a patent granted a
license to the defendant to manufacture and sell harrows
embodied in the invention covered by the patent. The
license provided for the payment to the licensor by the
licensee of a royalty of one dollar for each harrow or frame
sold and stipulated that the licensee was not to sell to any
person for a less price than that named, and that the
license was subject to change from time to time. The case
was one arising upon license agreements, originating in a
state court, and did not involve the construction of the
patent act in the circumstances now disclosed.

Chief reliance, however, of the plaintiff in this case is
upon the recent decision of this court in *Henry* v. *Dick Co.*,
224 U. S. 1. An examination of the opinion in that case
shows that the restriction was sustained because of the
right to use the machine granted in the patent statute,
distinguishing in that respect the patent from the copy-
right act. In that case a patented mimeograph had been
sold which bore an inscription in the form of a notice that
the machine was sold with the license restriction that it
might only be used with stencil, ink and other supplies
made by the A. B. Dick Company, the owners of the
patent. The alleged infringer sold to the purchaser of
the mimeograph a can of ink suitable for use with the
machine with full knowledge of the restriction and with
the expectation that the ink sold would be used in connec-
tion with the machine. It is expressly stated in the opinion
that the machine was sold at cost or less and that the
patentee depended upon the profit realized from the sale

of the non-patented articles to be used with the machine for the profit which he expected to realize from his invention (224 U. S. 26). After commenting upon the copyright statutes and the resemblance between the author's right to vend copies of his work and the patentee's right to vend the patented thing, it was said (p. 46):

"To the inventor, by § 4884, Revised Statutes, there is granted 'the exclusive right to make, *use* and vend the invention or discovery.' This grant, as defined in *Bloomer* v. *McQuewan*, 14 How. 539, 549, 'consists altogether in the right to exclude every one from making, *using* or vending the thing patented.' Thus, there are several substantive rights, and each is the subject of subdivision, so that one person may be permitted to make, but neither to sell nor use the patented thing. To another may be conveyed the right to sell, but within a limited area, or for a particular use, while to another the patentee may grant only the right to make and use, or to use only for specific purposes. *Adams* v. *Burke*, 17 Wall. 453; *Mitchell* v. *Hawley*, 16 Wall. 544; *Rubber Co.* v. *Goodyear*, 9 Wall. 788, 799." (Italics in the original opinion.)

That case was distinguished from *Bobbs-Merrill* v. *Straus, supra,* construing the copyright act, because of the difference in the terms of the copyright and patent statutes, the patent act conferring not only the right to make and sell, but the exclusive right to *use* the subject-matter of the patent. It was under the right to use that the license notice in question was sustained, and it is obvious that the notice in that case dealt with the use of the machine and limited it to use only with the paper, ink and supplies of the manufacture of the patentee. While the title was transferred, it was a qualified title, giving a right to use the machine only with certain specified supplies. It was said in the *Dick Case* (p. 47) that "there is no collision whatever between the decision in the *Bobbs-Merrill Case* and the present opinion. Each rests upon a

construction of the applicable statute, and the special facts of the cases."

It is contended in argument that the notice in this case deals with the use of the invention, because the notice states that the package is licensed "for sale and use at a price not less than one dollar," that a purchase is an acceptance of the conditions, and that all rights revert to the patentee in event of violation of the restriction. But in view of the facts certified in this case, as to what took place concerning the article in question, it is a perversion of terms to call the transaction in any sense a license to use the invention. The jobber from whom the appellee purchased had previously bought, at a price which must be deemed to have been satisfactory, the packages of Sanatogen afterwards sold to the appellee. The patentee had no interest in the proceeds of the subsequent sales, no right to any royalty thereon or to participation in the profits thereof. The packages were sold with as full and complete title as any article could have when sold in the open market, excepting only the attempt to limit the sale or use when sold for not less than one dollar. In other words, the title transferred was full and complete with an attempt to reserve the right to fix the price at which subsequent sales could be made. There is no showing of a qualified sale for less than value for limited use with other articles only, as was shown in the *Dick Case*. There was no transfer of a limited right to use this invention, and to call the sale a license to use is a mere play upon words.

The real question is whether in the exclusive right secured by statute to "vend" a patented article there is included the right, by notice, to dictate the price at which subsequent sales of the article may be made. The patentee relies solely upon the notice quoted to control future prices in the resale by a purchaser of an article said to be of great utility and highly desirable for general use.

The appellee and the jobbers from whom he purchased were neither the agents nor the licensees of the patentee. They had the title to, and the right to sell, the article purchased without accounting for the proceeds to the patentee and without making any further payment than had already been made in the purchase from the agent of the patentee. Upon such facts as are now presented we think the right to *vend* secured in the patent statute is not distinguishable from the right of *vending* given in the copyright act. In both instances it was the intention of Congress to secure an exclusive right to sell, and there is no grant of a privilege to keep up prices and prevent competition by notices restricting the price at which the article may be resold. The right to vend conferred by the patent law has been exercised, and the added restriction is beyond the protection and purpose of the act. This being so, the case is brought within that line of cases in which this court from the beginning has held that a patentee who has parted with a patented machine by passing title to a purchaser has placed the article beyond the limits of the monopoly secured by the patent act.

In *Adams* v. *Burke*, 17 Wall. 453, Mr. Justice Miller, delivering the opinion of the court, pertinently said (p. 455):

"The vast pecuniary results involved in such cases, as well as the public interest, admonish us to proceed with care, and to decide in each case no more than what is directly in issue. . . .

"The true ground on which these decisions rest is that the sale by a person who has the full right to make, sell, and use such a machine carries with it the right to the use of that machine to the full extent to which it can be used in point of time.

"The right to manufacture, the right to sell, and the right to use are each substantive rights, and may be granted or conferred separately by the patentee.

"But, in the essential nature of things, when the patentee, or the person having his rights, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly. That is to say, the patentee or his assignee having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentees."

*Bloomer* v. *McQuewan, supra; Goodyear* v. *Beverly Rubber Co.*, 1 Cliff. 348, 354, 10 Fed. Cases, 638; *Chaffee* v. *Boston Belting Co.*, 22 How. 217, 223; *Keeler* v. *Standard Folding Bed Co.*, 157 U. S. 659.

Holding these views, the question propounded by the Court of Appeals will be answered in the negative, and

*It is so ordered.*


Dissenting: MR. JUSTICE McKENNA, MR. JUSTICE HOLMES, MR. JUSTICE LURTON and MR. JUSTICE VAN DEVANTER.