### JOCKMUS v. LONDON et al.

(Circuit Court of Appeals, Second Circuit.   February 25, 1920.)

#### No. 160.

**Patents ⟪286—Assignment construed as license.**

An assignment of patents, construed in connection with other writings between the parties, *held* to show that the assignee was a nonexclusive licensee, without title which would support suits for infringement.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Charles H. Jockmus against Louis B. London and others. Decree for defendants, and complainant appeals.   Affirmed.

The form of Jockmus' bill is that of an ordinary action to restrain infringement of certain patents, whereof he was and is the owner of record.   The patentee, however, was London, and the bill, when read with the assignments to Jockmus (copies of some of which are attached as exhibits), suggests on its face the question litigated below, viz. the nature of Jockmus' and London's relative rights in and to said patents.

But, while the bill asserts absolute or legal ownership in plaintiff, it alleges generally that an agreement of May, 1919, had been obtained by fraud, and prays the court to "confirm" in him the "entire right, title, and interest" in and to said patent.   This may have been intended as a request to set aside one agreement; but the whole bill is so insufficient as one to reform or cancel any written contract that we regard the suggestions of wrong and prayer for confirmation as surplusage, and inquire, as did the court below, concerning Jockmus' title as revealed by the admittedly genuine contracts between London and himself.

Plaintiff and London had known each other for years, and plaintiff was manufacturing gas burners for London, when the latter suggested a mechanical change in and a shape for the fixture.   This idea produced patent 1,103,365, and design 45,427.   Very soon after patents issued, by papers badly drawn and unnecessary in number, the legal title in both was conveyed to Jockmus, subject to reservations in favor of London not deemed necessary to set forth, because in December, 1917, the two men agreed in writing (after reciting prior conveyance to Jockmus) that:

"The said Charles H. Jockmus does hereby authorize and empower the said Louis B. London to institute any action or actions, either in law or equity, against any or all parties who may have in the past or may in the future infringe the rights of the said Charles H. Jockmus in and to said letters patent or either of them, and to prosecute said actions to a final conclusion, either in his own name, or in the name of said Charles H. Jockmus, or in the joint names of both, as may be found necessary, provided that the right so retained is upon the express understanding and agreement that the said Louis B. London shall retain all benefits to be derived from such suits, shall pay any and all costs and expenses which he may incur, either for counsel fees or for costs in the institution or prosecution of said actions, and that he will save the said Charles H. Jockmus free and harmless from the payment of any counsel fee or costs that may be occasioned or incurred in the consequence of the institution or prosecution of said actions."

⟪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the agreement quoted there is nothing inconsistent with any previous writing; it is fuller. On this basis the parties continued until May, 1919, when they signed the following:

"For the consideration of L. B. London, of New York, bringing suit on any of the patents on burners owned by us and his right to sue on said patents, any money received from said suits is to be divided evenly between us, L. B. London and Charles H. Jockmus, after said L. B. London has been paid all expenses in connection with said suit, which are to be deducted from the money received, the balance to be divided evenly between said L. B. London and Chas. H. Jockmus. Mr. London is the only one to have full charge of all patent litigation on the burner patents which we hold and to commence action against any concerns he may choose, except Welsbach, Eclipse Light Company, and Incandescent Supply Company."

A few days later plaintiff wrote London that, since "your purpose is, not to bring suit against infringers," but to "protect" manufacturers, other than the writer, "whom you have induced" to make burners "for you and your associates," therefore the agreement of May, 1919, is canceled, and "I will take full charge of all litigation in regard to the patents which I own myself." This suit was begun soon thereafter. No issue other than title was tried below, and the decree appealed from declares that "plaintiff is without title in [the patents in question] sufficient to sue for injunction and accounting."

Julian S. Wooster, of New York City (Philip L. Miller and Sullivan & Cromwell, both of New York City, of counsel), for appellant.

Irving M. Obrieght, of New York City, for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Having pointed it out as too plain for discussion that this is a common patent bill for injunction and accounting, the only question presented here is to ask whether plaintiff has shown any title justifying such suit. The bill avers him to be the absolute owner, and London a mere infringer. This means, having regard to the nature of patent rights, that Jockmus is the only person entitled to prevent others, from making, using, or vending the patented article, and London a tort-feasor for violating the prohibition. Bauer v. O'Donnell, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150.

But a glance at the written agreements shows that London has some rights, which necessarily are to be subtracted from Jockmus' rights. It is plain that the relation of these two men from, and indeed before, the issuance of the patents, was what they intended to express in the agreement of December, 1917.. They perhaps expressed it very badly, but, until that document is reformed or vacated for fraud or mistake, courts are bound to interpret it according to its wording, and, the words being simple, nothing outside those written words is permitted to change the legal effect of the language used. It is not uncommon that men use words without any comprehension of their legal effect, but that does not per se change the effect of the words they use.

Just as a conveyance of land in fee may by other writings be turned into a mortgage, so may the absolute grant of a patent right be turned into a lesser estate. In this instance, it is clear from the written instruments that, when London conveyed the patents to Jockmus, he received back (or perhaps in legal effect reserved) the rights described

in the agreement of December, 1917. Those rights are, and always have been, to decide whom he will sue as infringer and (before May 1919) keep for himself all he can recover. But this is the whole right of a patentee.

It is true that the rights may be transferred to an exclusive licensee, and that the equitable owner of a patent has a title that will support action. Kennedy v. Hazelton, 128 U. S. at 672, 9 Sup. Ct. 202, 32 L. Ed. 576.. It is the opinion of a majority of this court that Jockmus is not the absolute owner of these patents, nor has he equitable title thereto, because he has not and never had any right to sue on the patent; that right became London's when he received the grant, and he has never parted with it. Nor is Jockmus an exclusive licensee, because the phrase means (inter alia) one solely entitled to pocket recoveries from infringers, which is not true of Jockmus.

There is but one category left to which plaintiff may be assigned— a nonexclusive licensee—and a majority of the court so holds. This measure of title is confessedly insufficient to support an action such as this. This was the result below, and of it appellant's present counsel (in effect) bitterly complains, because to suppose that men would go through all this apparatus of papers only to give Jockmus a license is absurd. It is absurd; but we indulge in no such supposition. Through the mist of writings, and with very little reading between lines, the intention, not of both parties, but of Jockmus, is almost certain conjecture. It cost him a good deal of money to prepare machinery for making under London's patent, it was uncertain whether anybody wanted the things except London and his controlled or allied concerns (the other defendants herein), and he thought by the papers in evidence, starting with legal title to the patents, to keep London's trade. He did so for at least five years; then London went elsewhere; hence this suit. What London had, either in his mind or up his sleeve, cannot even be conjectured, as he was not called on to testify; but enough has been said to show that this particular suit cannot be maintained to enforce either what Jockmus got or what he in all probability wanted to get.

Decree affirmed, with costs.