## BUTTERICK CO. et al. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

No. 6.

**1. Monopolies ⊚⟩17(2) — Contract between manufacturer of patterns and dealer held one of sale, not of agency, and violative of Clayton Act.**

Contract whereby manufacturer agreed to supply standard patterns and advertising matter at price and on conditions named, which fixed resale price and restrained dealer from selling competitor's patterns, *held* a contract of sale, violative of Clayton Act, § 3 (Comp. St. § 8835c), and Federal Trade Commission Act, § 5 (Comp. St. § 8836e), notwithstanding use of terms "principal and agent" to characterize relation of parties.

**2. Monopolies ⊚⟩17(1)—Contract fixing resale prices contrary to law.**

Contracts fixing prices for resale are not only contrary to general law and void, but there is no power to make them, even in the case of patented articles, because of their monopolistic tendencies.

**3. Monopolies ⊚⟩17(2) — Manufacturer held not to have desisted from unfair methods, where certain of former contracts still in force, and new form of contract equally vicious.**

A manufacturer, after order of Federal Trade Commission to desist from selling patterns under contracts fixing resale prices and restricting dealers from dealing in other patterns, cannot be held to have discontinued offensive methods, where it is shown that many old forms of contract are still in use, and that new form of so-called agency contract is equally vicious.

**4. Monopolies ⊚⟩24(2)—Similar violations of Clayton Act by competitors is no defense or justification.**

That competitors are engaged in similar violations of the Clayton Act is no defense or justification for such violations.

**5. Commerce ⊚⟩40(1)—Distribution and sale of patterns, catalogues, and fashion sheets held interstate commerce, within meaning of Clayton Act.**

The distribution or sale of standard patterns to retail dealers, the sale of catalogues, fashion sheets, and other advertising matter to the same dealers, inseparably connected with the sale or agreements regarding delivery of patterns to retail distributors throughout the country, *held* interstate commerce, within the terms of the Clayton Act.

**6. Trade-marks and trade-names and unfair competition ⊚⟩80½, New, vol. 8A Key-No. Series—Jurisdiction of Circuit Court of Appeals in reviewing orders of Federal Trade Commission, original rather than appellate.**

Jurisdiction of Circuit Court of Appeals to review order of Federal Trade Commission, commanding manufacturer to desist from un-

fair business practices, is original rather than appellate, and its decree may protect rights of parties in such form as will be enforceable by it.

**7. Trade-marks and trade-names and unfair competition ⊚⟩80½, New, vol. 8A Key-No. Series—Federal Trade Commission granted decree enforcing its order against manufacturer, continuing to fix resale prices and binding retailers to distribute only its products.**

Where a manufacturer continues the practice of fixing the resale price of its goods, and requiring retail distributors to deal only in its patterns, in violation of Clayton Act, § 3 (Comp. St. § 8835c), and Federal Trade Commission Act, § 5 (Comp. St. § 8836e), after being ordered by the Federal Trade Commission to desist, the Circuit Court of Appeals, on cross-petition of the Commission, will decree enforcement of Commission's order as prayed.

Petition to Review Order of the Federal Trade Commission.

By order of the Federal Trade Commission the Butterick Company and others were required to cease and desist from the use of certain methods of unfair competition in the industry relative to the designing, distribution, and sale of tissue patterns in making dresses and wearing apparel, and they petition to revise such order. Order affirmed.

Noble, Morgan & Scammell, of New York City (Julius M. Mayer, Herbert Noble, and Scott Scammell, all of New York City, of counsel), for petitioners.

W. H. Fuller, of McAlester, Okl., and Edward E. Reardon, of New York City, and E. C. Alvord, of Washington, D. C., for respondent.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. The industry affected by this order has for its purpose the enabling of a woman to purchase a pattern for a dress or other piece of wearing apparel, and to use it as a pattern upon a sufficient amount of material to make the article in her own home, thus avoiding the outside tailoring or purchasing of ready-made garments. This, it is said, reduces the cost of women's garments very materially. She contributes her own labor and skill, using the pattern as a guide. The manufacturer creates a design, and from it a master pattern is made. Other patterns are cut out of tissue paper, and these are then placed in envelopes and sold as herein described. The petitioners, who are manufacturers, in connection with their method of advertising to the trade, published a mag-

azine called the Delineator for circularization among women readers. There are published in that magazine pictorial representations of pattern designs. The woman sees the patterns thus pictorially represented, makes her selection, and later her purchase. Her identification is by the number marked on the pattern. The business practice of publishing patterns is not confined to a single magazine. They may be found in various magazines, such as the Ladies Home Journal, the McCall Magazine, and other publications. Patterns are on sale at stores in various cities and towns in the United States, principally department stores. The petitioners' business has grown to very considerable proportions, the last reported distribution of the petitioners being 27,000,-000 annually, and the magazine has a circulation of over 900,000.

It is established that the petitioners have contracts with about twenty thousand retail dry goods dealers and other stores throughout the United States. Each contract binds the dealer to maintain the resale price fixed on the labels, and binds such dealers not to sell, or permit to be sold on their premises, the patterns of competitors. They are permitted to enforce these provisions by refusing to sell to dealers who refuse to make such agreements, or to be bound by them, as well as by threats of suit and the actual institution of suits for damages. The complaint, as filed, alleges that this business method constituted unfair competition, and charged violation of section 3 of the Clayton Act of October 15, 1914 (Comp. Stat. § 8835c), and section 5 of the Federal Trade Commission Act (Comp. Stat. § 8836e). Hearings were held and testimony taken, after which the Commission entered an order commanding the petitioners to cease and desist "from selling the patterns manufactured by them, or any of them, for resale to the public upon any contract, agreement, or understanding that the distributor shall maintain the resale price fixed by the maker, and/or that such distributor shall not deal in patterns produced by any other maker than the respondents, or any of them."

The petitioners contend that, while the pattern manufacturers practiced this method of fixing resale prices, they were not engaged in unfair competition. They say that they are using "the same methods as their competitors," and that "those methods are inherent in this business, and have in no manner hindered competition between the pattern manufacturers," and that in point of fact "competition has been more keen and suc-

cessful in each succeeding year." It is argued that, because of the unique character of the business, this industry presents distinctiveness from that of others where price fixing has been condemned. Miles v. John D. Park, 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502; Bauer v. O'Donnell, 229 U. S. 1, 33 S. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150; United States v. Schrader's Sons, Inc., 252 U. S. 85, 40 S. Ct. 251, 64 L. Ed. 471; Federal Trade Commission v. Beech-Nut Packing Co., 257 U. S. 453, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882. It is said that protection to the public is achieved by the label price, and that, in the cases referred to of price fixing, there was a show of monopolistic control or suppression of competition, planned through the fixing of resale prices in conjunction with the nature of business and the means employed in maintaining the price.

The respondent has filed an answer to the petition to review the order, and in it contends that (1) the court should affirm the order; and (2) that the court should enjoin the petitioners from continuing the violations of law found by the Commission to have been committed.

[1] This presents the question of whether the form of contract which is now used by the petitioners, as superseding the contract above referred to, still violates section 5 of the Federal Trade Commission Act. The new contract fixes the resale price, and restrains the dealer from selling the goods of the competitor. It is claimed for it that it is a contract of agency, and not a contract of sale, and that therefore it is not within the terms of the act. We think both the contracts are the same in substance, and by their terms are in violation of section 3 of the Clayton Act, which forbids contracts of sale made upon the agreement or understanding of price fixing, or that the purchaser shall not deal in goods of competitors, both of which may substantially lessen competition or tend to create a monopoly. This form of contract was considered in Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 653, where it was held that a contract between the manufacturer and retailer creating an agency for the retailing of goods made by the manufacturer to be purchased by the retailer, with provisions for periodical exchange of old goods for new of less value, and for repurchase by the manufacturer of stock on hand, was a contract of sale within section 3 of the Clayton Act, and it was further held that such a contract,

granting an agency to the store for selling the goods, and forbidding the retailer from assigning or transferring the agency, or removing it from its original location, without the manufacturer's consent, and forbidding the retailer to sell on the premises goods of the manufacturer's competitors under the terms of the contract, and to sell the same at label prices fixed thereon, was a general restriction, not confined to the particular shop, and such clauses were in violation of section 3 of the Clayton Act.

While the latter contract is a modification of the former, and is sought to be regarded as one of agency, it is apparent to us that it is a contract of sale. Straus v. Victor Talking Machine Co., 243 U. S. 490, 37 S. Ct. 412, 61 L. Ed. 866, L. R. A. 1917E, 1196, Ann. Cas. 1918A, 955; Standard Fashion Co. v. Magrane-Houston Co., supra. Section 3 of the Clayton Act condemns sales or agreements of sales made under terms as to substantially lessen competition or tend to create a monopoly in any line of commerce. It must of necessity deal with the consequences flowing from contracts, as here considered, which have restrictive covenants limiting the rights of the purchaser to deal with the goods of the seller only. The president of one of the petitioners said in his testimony that 85 per cent. of the business transacted by it was under the form of contract thus condemned in Standard Fashion Co. v. Magrane-Houston Co., supra.

We think the form of contracts used in that case are the same in substance as the present ones. By their terms they are for the resale of patterns, and they fixed a price at which they must be resold. They contain a restrictive clause against the sale of competitors' goods, and provide that the patterns on hand at the expiration of the contract "will be returnable for repurchase," and the consideration for the patterns is referred to as "purchase price of patterns," and "patterns returned in exchange or for redemption must have been purchased hereunder." Indeed, all of the contracts of the petitioners are in their terms substantially the same, and the business method pursued was in keeping with the terms of these contracts and in compliance therewith. The officers of the petitioner who testified substantiated this. These contracts provide means for a real or substantial lessening of competition. The petitioners are one of seven of the largest concerns engaged in this industry. There are about 50,000 pattern agencies in the United States, and the petitioners, by their contracts, control about 20,-000. They restrict these dealers by their contract. The application of this contract is not only a potential evil, but, indeed, is an actual and powerful restraint upon trade by the petitioners.

[2] We do not distinguish between the old form and present form referred to in respondent's answer. We think they have the same injurious effect. Indeed, the record practically shows the effect of such restraint of competition. There are instances where the dealer has been cut off by the petitioners for handling the goods of the competitor. Contracts fixing prices for resale are not only contrary to the general law, and void, but there is no power to make them, because of their monopolistic tendencies even in a patented article. Boston Store of Chicago v. American Graphophone Co., 246 U. S. 8, 38 S. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447.

[3] It is urged that the petitioners have ceased the use of their former contract by substituting therefor the new form referred to (Exhibits 25, 26, 27, of this record). However, it is established that many of the old forms of contract are still in use and of binding force. Because the petitioners are making the new form of so-called "agency contracts," it cannot be argued that they have discontinued the methods found by the commission to be offensive to the act. Sears, Roebuck & Co. v. Federal Trade Commission, 258 F. 207.

[4] The argument that other competitors are doing substantially what the petitioners do has no effect. It is not important. Standard Fashion Co. v. Magrane-Houston Co., supra. The contracts adopted by the petitioners, in the form of Exhibits 25, 26, and 27, differ only from the terms of the former in calling the petitioners "principal" and the retail dealer "agent," and the principal agrees to supply f. o. b. its patterns and advertising matter at the price and on the conditions named on the reverse side, and, instead of the dealer agreeing to purchase, the agent agrees to accept from the principal and keep on hand for sale at all times its patterns. The exact terms of payment, as in the former contract, provide that one-half of the agreed price for the patterns is to be paid by a certain date, and the balance is debited to the retail dealer, called "a standing credit," on which interest is charged to the retail dealer, and the retail dealer is immediately on signing the contract, obliged to pay this balance, which is due and payable at the termination of the contract. As in the former contracts, all

other patterns or goods charged under the contract are to be paid for on or before the 10th of the following month succeeding the date of shipment, whether the goods are sold on that date or not.

This we regard as an effort to avoid the passing of title, and thus attempt to create an agency. But there is nothing to indicate a qualified sale, and there was no transfer of a limited right to use these goods. The dealer had the title and the right to use the article purchased. He could sell and dispose of it. His sole obligation was to pay for it. In the meantime, he had full possession and authority over the patterns, when the title passed to him. Baner v. O'Donnell, 229 U. S. 1, 33 S. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150; Straus v. Victor Talking Machine Co., supra. We regard this new form of contract as an effort to modify the form, and not the substance, of the petitioners' business methods. We do not think the contracts successfully make out an agreement of agency, as distinguished from a contract of sale. This studied effort to avoid the use of the word "sale" cannot aid the petitioners in carrying out this practice, which the Commission has justly condemned as obnoxious to the public interest. This record is replete with evidence justifying the conclusion of the Commission. It is in large part admitted by the officers of the petitioners to be their business method.

[5] The distribution or sale of patterns of the petitioners to the retail dealers, the sale by the petitioners of the catalogues, fashion sheets, and other advertising matter referred to in the contracts of the petitioners, and purchased by the retail dealers, is inseparably connected with the sale or agreements regarding the delivery of the patterns by the petitioners to the retail distributors, and is a part of the same transaction in commerce. The contract, in so far as it is a sale of the catalogues, fashion sheets, and other advertising matter by the petitioners to the retail distributors in other states, is a transaction in interstate commerce. The sale of these publications and advertising matters are so connected in use with the disposal of the patterns themselves, as to indicate that the whole business is one affair of commerce. Davis v. Commonwealth of Virginia, 236 U. S. 697, 35 S. Ct. 479, 59 L. Ed. 795; Dozier v. State of Alabama, 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264; Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336.

4 F.(2d)—58

[6, 7] We are urged by the respondent to grant relief upon this answer, which is a cross-petition seeking the enforcement of the order of the Commission, so as to include therein a command to the petitioner to cease and desist from its business practices in the sale of these products by them, or any of them, and from enforcing its business methods requiring the distributor to maintain the resale price fixed by the petitioners, and requiring such distributor to deal only in patterns purchased from the petitioners or any of them. The jurisdiction of the court in this proceeding is original rather than appellate, and, since it is the former, we may, in our own decree, protect the rights of the parties and in such form as it would be enforceable by us. Silver Co. v. Federal Trade Commission (C. C. A.) 292 F. 752. The decree should be along the lines adopted by the courts of equity in hearing suits of injunction. It is the general practice in such cases that, if the defendant is continuing or threatening acts, there will be an injunction, but, if whatever was unlawful ceased long before the bill was filed, and there is no reason to apprehend its renewal, the bill will be dismissed without prejudice. But here the petitioners are not only doing business under the original contract, but the new forms of contract are both deemed a violation of section 3 of the Clayton Act. The command of the order to cease and desist is broad enough to include both forms of contract. Both are offensive to the act, and fall within the enforcement of the order to cease and desist.

Concluding, as we do, that the Commission's order was properly made, it is affirmed, and the respondent may have an order entered on its cross-petition.