BIC LEISURE PRODUCTS, INC., and
Windglider Fred Ostermann,
GmbH, Plaintiffs,

v.

WINDSURFING INTERNATIONAL,
INC., Defendant.

No. 83 Civ. 3774 (MEL).

United States District Court,
S.D. New York.

July 6, 1988.

Jonathan A. Marshall, Pennie & Edmonds, New York City, for plaintiff BIC Leisure Products, Inc.; Thomas F. Reddy, Jr. and Brian M. Poissant, of counsel.

Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., for defendant; Harold E. Wurst, of counsel.

LASKER, District Judge.

In this motion, part of an ongoing patent infringement action, BIC Leisure Products, Inc. ("BIC") proposes to limit the theories upon which Windsurfing International, Inc. ("WSI") may seek damages for infringement of its reissue patent for sailboards. Earlier proceedings established that, although BIC had infringed WSI's patent, the infringement was not willful. *Windsurfing International, Inc. v. Fred Ostermann, GmbH*, 668 F.Supp. 812 (S.D.N.Y. 1987). The motion is denied.

*Background*

WSI suggests a number of damage theories based on some form of "lost profit" theory, with a damage floor of a "reasonable royalty." BIC contends that WSI may recover damages based only on the "reasonable royalty" theory.

WSI maintains that it is entitled to damages for: 1) lost profits for sales WSI would have made absent the infringement ("lost profits"), 2) lost profits for WSI sales made at prices reduced to match BIC's lower prices ("reduced profits"), 3) lost profits for the overall reduction in WSI's business attributable to its need to divert resources because of the infringement ("generally reduced business"), 4) lost future profits due to depressed sailboard prices generally, which WSI claims are attributable to BIC's infringement ("projected lost profits"), and 5) projected lost profits for future competition with BIC which WSI claims will be accelerated because BIC's infringement will allow it to reenter the market in an enhanced position ("accelerated reentry by BIC").

■ As provided in 35 U.S.C. § 284 (1982), a successful plaintiff in a patent infringement action is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer...." The Federal Circuit has construed the statute to mean that "[w]hen a patent owner would have made the sale 'but for' the infringement, the award based on his lost profits is appropriate ... [and t]he patent owner's burden of proof is not absolute, but one of reasonable probability." *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986) (citations omitted). The reasonable probability standard requires that damages may not be speculative. If damages based on lost profits are not proven according to the above test, the statute requires that damages equal to a reasonable royalty be awarded.

## I.

BIC argues that WSI should not be permitted to pursue its first three damage theories because, according to BIC, WSI cannot satisfy two conditions necessary to the success of these theories.

## A.

■ BIC claims that lost profits (of the form specified in the first three damage theories) can only be awarded in a two-supplier market, a condition not satisfied in this case, according to BIC, because of WSI's numerous licensees.

BIC cites a number of cases that it claims supports the proposition that a two-supplier market is a requirement for proving any kind of lost profit damage theory. *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 653 (Fed. Cir.) ("when the parties involved in an action are the only suppliers in the market, lost profits are a particularly appropriate measure of damages"), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985); *Paper Converting Machine Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 21

(Fed.Cir.1984) ("a patent holder can most commonly show [evidence justifying lost profits—demand for his patented product, the absence of acceptable noninfringing substitutes, production capacity able to meet demand, and computations on the loss of profits] when the parties involved in the action are the only suppliers") (citation omitted); *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1065 (Fed.Cir.1983) (in a two-supplier market, causation may be inferred). However, the cases do not stand for the proposition that a two-supplier market is a required condition. Instead, these cases only indicate that the existence of a two-supplier market makes the patentee's burden of proving causation easier.

As further support for its argument that a two-supplier market is required, BIC cites recent cases in which the courts awarded only reasonable royalty damages to patent owners in markets having more than two suppliers. For example, in *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed.Cir.1987), the court affirmed an award of damages based on lost profits only for those sales made in a two-supplier market and reasonable royalties for the remaining sales as to which no two supplier market was proven, and in *Del Mar Avionics v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed.Cir.1987), the court emphasized the appropriateness of lost profits as a measure of damages, rather than reasonable royalties, where the patentee, unlike in the case at hand, had not granted any licenses. However, neither *Amstar* nor *Del Martin* held that a two supplier market is required for an award of lost profits. *Amstar*, like *Lam, Kori,* and *Paper Converting*, only emphasizes that one can infer causation if there are only two viable competitors in the market. *Del Mar*, upon close reading, provides even less support for BIC, because the court states that causation may be inferred where the patent owner and *infringers* were the only suppliers in the market and disagrees with the district court's rejection of Del Mar's argument that it was entitled to "its pro rata share of Quinton's sales based on the one or two (depending on the year) other suppli-

ers who were also accused infringers." 836 F.2d at 1327.

Not only does BIC lack support for the proposition that a two-supplier market is necessary to prove damages based on lost profits, but WSI cites cases in which lost profits have actually been awarded in the absence of a two-supplier market. *Orthman Mfg., Inc. v. Chromalloy American Corp.*, 512 F.Supp. 1284, 1293–96 (C.D.Ill. 1981) (affirming award of lost profits where patent owner had a number of licensees and award was proportionate to percentage of market controlled by patent owner); *Bros, Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 598 (5th Cir.1963) (affirming award of lost profits to patentee, despite presence of other competitors, because to do otherwise would permit an infringer to go unaccountable "because had he not poached, another would or, at any rate, sales of similar products would have been made, not by the patent owner, but by others"); *but see Saf–Gard Products, Inc. v. Service Parts, Inc.*, 491 F.Supp. 996, 1007 (D.Ariz.1980) (stating that loss of royalty is the appropriate measure of damages where the patent owner has granted royalty-bearing licenses and that lost profits is appropriate if no such licenses have been awarded). Although the facts of these cases do not exactly parallel those of the case at hand, they do stand for the proposition that lost profits can be awarded in a market with more than two suppliers, whether those other suppliers are infringers or licensees.

### B.

■ BIC contends that the second condition the patent owner must prove to demonstrate lost profits is that the patent owner's sales increased upon the cessation of infringement. BIC claims that WSI's sales did not increase, and in fact decreased, when BIC's infringement ended. Again, however, the cases upon which BIC relies do not support this conclusion.

As WSI points out, in *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1068 (Fed.Cir.1983), the court merely stated that "[s]uch post-infringement growth rate is certainly admissible evidence to form a basis for inferring that [the patentee] would have grown at the pre-infringement rate...." In *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895 (Fed.Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986), the court affirmed the decision of the Special Master who, in her report, stated that a post-infringement increase in sales volume "is strong evidence of the fact that but for Dura's infringement, TMW would have realized a sales volume at least equal to the combined sales volume of the two companies." *See* Brief in Support of Motion by BIC Leisure Products, Inc. to Define and Limit the Accounting Issues, Exhibit E, Report of Special Master, at 79a. Contrary to BIC's assertion that proof of increased sales volume is necessary to establish lost profits, the cases merely support the proposition that increased sales volume is evidence which supports a claim for damages based on lost profits.

### II.

■ BIC attacks WSI's remaining two damage theories, lost future profits due to depressed sailboard prices generally, ("projected lost profits"), and projected lost profits based on future competition with BIC ("accelerated reentry by BIC"), on the grounds that recovery based on these theories would effectively extend the term of WSI's patent monopoly.

BIC argues that any extension of the benefits of a patent beyond its expiration is impermissible as a matter of law. BIC cites two cases in support of its argument, neither of which addresses the question of damages. In *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the Court held that royalty agreements which extend beyond the date of the patent's expiration are unlawful per se and thus unenforceable. The Court's holding rested on the reasoning that "[i]f that device were available to patentees, the free market visualized for the post-expiration would be subject to monopoly influences that have no proper place there." *Id.* at 32–33, 85 S.Ct. at 179. The Court based its holding in part on a quotation from an

earlier patent decision: "... any attempted reservation or continuation in the patentee or those claiming under him of the patent monopoly, after the patent expires, whatever the legal device employed, runs counter to the policy and purpose of the patent laws." *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256, 66 S.Ct. 101, 104, 90 L.Ed. 47 (1945). *See also Paper Converting Machine Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 16 (Fed.Cir.1984) ("Care should be taken not to extend by judicial construction the [patent] rights and privileges which it was the purpose of Congress to bestow," quoting *Bauer v. O'Donnell*, 229 U.S. 1, 10, 33 S.Ct. 616, 617, 57 L.Ed. 1041 (1913)). Although these cases instruct courts to consider the actual effect of patent infringement determinations, they do not hold that the theories proposed here by WSI are impermissible.

WSI, in these theories, seeks compensation for future losses it claims it will incur because BIC will reenter the market at a level accelerated by its earlier infringement. By the very nature of the argument, WSI in these two damage theories proposes only to be made whole for *past* violations of BIC, and thus the theories are consistent with the purpose of 35 U.S.C. § 284 of awarding damages approximating what "the patent holder would have made had the infringer not infringed." *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1064 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457 (1964)). Accordingly, having found BIC's argument that these theories constitute an impermissible extension of the patent unpersuasive, *cf. Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858 (Fed.Cir.) (finding use of a patented drug for federally mandated premarketing tests violated patent law, despite the argument that this holding effectively granted a *de facto* extension of the patent beyond its expiration), *cert. denied*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984), WSI may attempt to prove the damages to which it is entitled under these theories. *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 898 (Fed.Cir.) ("The methodology of assessing

and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court."), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986).

For the reasons stated, BIC's motion to define and limit the accounting issues is denied.

It is so ordered.